FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 15, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TERESA F.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 4:17-CV-05186-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 14. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment in part and remands for additional proceedings consistent with this order.

## I. Jurisdiction

Plaintiff filed her application for Supplemental Security Income on August 5, 2013. AR 16, 650. Her alleged onset date of disability is August 5, 2013. AR 16. Plaintiff's applications were initially denied on December 17, 2013, AR 30-33, and on reconsideration on March 7, 2014, AR 35-36.

A hearing with Administrative Law Judge ("ALJ") Timothy Mangrum occurred on December 17, 2015. AR 647-70. On August 5, 2016, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 16-26. The Appeals Council denied Plaintiff's request for review on September 19, 2017, AR 7-9, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on November 15, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 30 years old at the alleged date of onset. AR 25, 46. She has a limited education through ninth grade and she is able to communicate in English. AR 25, 81-82, 246. Plaintiff has no past relevant work. AR 25.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from August 5, 2013, through the date of the ALJ's decision. AR 16, 26.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 2013 (citing 20 C.F.R. § 416.971 *et seq*.). AR 18.

**At step two**, the ALJ found Plaintiff had the following severe impairments: back impairment; obesity; and personality disorder (citing 20 C.F.R. § 416.920(c)). AR 18.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 19.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform light work, except: she can only occasionally climb ladders and stairs; she can occasionally kneel, crouch, and crawl; she should avoid concentrated exposure to vibration, fumes, odors, dust, gases, and hazardous conditions; she is limited to tasks that she can learn in 30 days or less; she is limited to jobs that require simple, work-related decisions and with few workplace changes; she can have only occasional contact with the public and coworkers; and she would have breaks in concentration and attention, therefore production would decrease, this would happen up to 5% of the shift. AR 20.

The ALJ found that Plaintiff has no past relevant work. AR 25.

**At step five**, the ALJ found, in light of her age, education, work experience, and residual functional capacity, there are additional jobs that exist in significant

numbers in the national economy that Plaintiff can perform. AR 25-26. These include assembler, housekeeper, and agricultural produce sorter. AR 26.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to consider whether Plaintiff's functioning meets listing 12.05C (2) improperly discrediting Plaintiff's subjective complaint testimony; and (3) improperly evaluating the medical opinion evidence.

## VII.   Discussion

### A. The ALJ Erred by Failing to Evaluate Listing 12.05C.

#### a.  Legal Standard.

Plaintiff argues that she is presumptively disabled at step three because she meets or exceeds the criteria of Listing 12.05C.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To meet a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in

severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

The structure of Listing 12.05 is "unique" in that it "allows a claimant to be found per se disabled without having to demonstrate a disabling, or even severe, level of mental functioning impairment," which sometimes leads to "curious result[s]." *Abel v. Colvin*, 2014 WL 868821, at *4 (W.D. Wash. 2014) (internal citation and quotation marks omitted). "The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Thus, a claimant must meet the standard set forth in the introductory paragraph and at least one of the four listed criteria. *Id*. Listing 12.05 reads, in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied . . .

C. A valid verbal, performance, or full IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In sum, in order to be considered presumptively disabled under Listing 12.05C based on "intellectual disability," a claimant must present evidence of: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which initially manifested before the age of 22 (i.e., "during the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function" is required for Listing 12.05C. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C*; see Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir.2013).

It is important to note that, at step three of the sequential evaluation process, it is still the claimant's burden to prove that her impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpart P. *Oviatt v. Com'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005).

### b. IQ Score Validity.

The primary element of the listings at issue is whether or not Plaintiff provided a valid IQ score meeting the requirements Listing 12.05C. As noted above, a finding of disability under Listing 12.05C requires a valid verbal,

performance, or full IQ of 60 through 70. 20 C.F.R. Pt 404, Subpt. P, App. 1, Listing 12.05.

The Ninth Circuit directs that an ALJ can decide that an IQ score is invalid. *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). In *Thresher*, the Ninth Circuit stated that the "regulations' inclusion of the word 'valid' in Listing 12.05(C) makes the ALJ's authority clear." *Id*. Thus, an IQ score may be rejected as an invalid score by an ALJ. However, the Ninth Circuit also noted that it had "never decided what information is appropriately looked to in deciding validity," but that other circuit courts have said that a score can be questioned on the basis of "other evidence," but without explaining "exactly how other evidence impacts the validity of the score itself," and that other courts require "some empirical link between the evidence and the score." *Id*. at 475 n. 6 (citations omitted). "*Thresher* left that issue unresolved, but it suggests, at a minimum, that an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010). Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1258 (D. Or. 2016). The ALJ has responsibility to "determine credibility, resolve conflicts in the testimony, and

resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing 42 U.S.C. § 405(b); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

In December 2013, Plaintiff's IQ testing yielded a Full Scale IQ of 72 and a verbal performance score of 70. AR 237. However, Dr. Page, who administered the test, professed doubts in the reliability of the test results. AR 232-40. Specifically, Dr. Page stated that Plaintiff's performance on the tests was "somewhat unconvincing in many respects," leading him to "strongly suspect that she was underperforming relative to her potentials." AR 233. Dr. Page further declared that he found "some inconsistencies in the test scores between subtests which measured similar elements," and Plaintiff's "performance on some subtests was extremely low relative to [Dr. Page's] extensive experience with other patients with these instruments." *Id*. Dr. Page remarked that his "sustained observation of [Plaintiff] during the many subtests led me to doubt the legitimacy of her related effort, solely on the basis of clinical impression." AR 236. With regard to the IQ testing in particular, Dr. Page found it "difficult to dispel the doubt raised by this woman's interview presentation and performance on memory testing." AR 238. Dr. Page concluded that his "clinical impression is one of under measurement of underlying potentials." AR 233.

Plaintiff contends that she received a verbal IQ score of 70, just meeting the IQ score requirement of Listing 12.05C, and should be found disabled at step three of the sequential evaluation process. Defendant argues that Dr. Page's statements make it clear that Plaintiff did not receive a *valid* IQ score within the required range as mandated by Listing 12.05C.

It is clear that the record contains a verbal IQ score within the required range for Listing 12.05C, and it is also clear that the doctor who administered the IQ test expressed doubts about the validity of the results. However, what both parties request is that the Court review and interpret Plaintiff's medical records in the first instance to determine whether or not the Plaintiff meets Listing 12.05C, rather than review the ALJ's analysis as contemplated by the statutory and regulatory framework. The ALJ is better suited than this Court to determine in the first instance the validity of IQ scores in the medical record, especially when the administering doctor expresses concerns and doubts regarding Plaintiff's efforts, as well as the symptoms and history related to Plaintiff's intellectual functioning with deficits in adaptive functioning as required by Listing 12.05. Faced with similarly deficient analysis by ALJs, courts have remanded for further administrative proceedings because the ALJ "is in a better position to evaluate the medical evidence" than a district court. *Santiago v. Barnhart*, 278 F. Supp. 2d 1049, 1058 (N.D. Cal. 2003); *see also, e.g.*, *Galaspi-Bey v. Barnhart*, No. C-01-01770-BZ,

2002 WL 31928500, at *3 (N.D. Cal. Dec. 23, 2002). The Court finds that remand

is appropriate on this issue. On remand, the ALJ will specifically consider and

discuss whether Plaintiff's impairments meet or equal Listing 12.05C.

**B. The ALJ did not err in finding Plaintiff's subjective complaints not entirely credible.**

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence

suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of [her] symptoms only by offering specific, clear, and convincing reasons

for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 21. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 20-23.

In this case, the ALJ found evidence of malingering. AR 23. This is supported by the record. *See Benton ex. el. Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir.2003) (finding of affirmative evidence of malingering will support a rejection of a claimant's testimony). The ALJ noted that Dr. Page, who examined Plaintiff and administered mental evaluation tests, determined that Plaintiff was deliberately underperforming and exaggerating her symptoms rather than expressing genuine complaints. AR 23, 231-40. Dr. Page stated that Plaintiff's affect was not particularly compelling and he questioned the veracity of Plaintiff's reports. AR 23, 232. In addition, Dr. Page stated that Plaintiff's performance on the tests was "somewhat unconvincing in many respects," leading him to "strongly suspect that she was underperforming relative to her potentials." AR 233. Dr. Page further declared that he found "some inconsistencies in the test scores between

subtests which measured similar elements," and Plaintiff's "performance on some subtests was extremely low relative to [Dr. Page's] extensive experience with other patients with these instruments." *Id*. Indeed, Dr. Page declared that on one test Plaintiff missed almost half of the items, which is the lowest score he had ever seen, even with patients with severe dementia. *Id*. Dr. Page remarked that his "sustained observation of [Plaintiff] during the many subtests led [him] to doubt the legitimacy of her related effort, solely on the basis of clinical impression." AR 236. With regard to the IQ testing in particular, Dr. Page found it "difficult to dispel the doubt raised by this woman's interview presentation and performance on memory testing." AR 238. He also noted that Plaintiff became increasingly aware of time pressures toward the end of the examination because she anticipated her four children returning home from school, and in her haste, her test scores improved. AR 233-34. Dr. Page concluded that his "clinical impression is one of under measurement of underlying potentials." AR 233.

In addition to malingering, the ALJ provided multiple clear and convincing reasons to discount Plaintiff's credibility that are supported by the record. AR 21-23. The ALJ found Plaintiff's allegations of disabling limitations are belied by her daily activities. AR 23. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). Specifically, the ALJ noted that despite allegations of completely debilitating limitations, Plaintiff takes care of her four children every day, two of which are too young for school and Plaintiff stays home with them during the day. AR 23. The ALJ further noted with regard to Plaintiff's children that she arises at 6:00AM most weekdays to bathe and prepare the two older children for school and does most of the childcare without assistance as she reported that her husband is disabled. *Id*. The ALJ reasonably found that Plaintiff's daily activities contradict her allegations of total disability.

The ALJ also found that Plaintiff's allegations of complete disability are not supported by the objective medical evidence and contradicted by the medical findings in the record. AR 21-22. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). There are minimal objective findings in the record to support Plaintiff's claims of physical limitations. Indeed, other than reports of shoulder pain after lifting a couch and arm pain after falling, the record

reflects almost no specific complaints of back pain at all. See, AR 21. The record is

replete with unremarkable medical imaging, no or only mild abnormalities, normal

reflexes and strength, normal gait, normal sensation, negative straight leg raise

tests, and no neurological deficits. *See, e.g.,* AR 21-22, 203, 206, 209, 246-48, 406,

418-19, 443. The record reflects almost no treatment was sought for Plaintiff's

alleged mental health impairments other than three visits with mental health

providers in April to June 2014. AR 22. A claimant's statements may be less

credible when treatment is inconsistent with the level of complaints or a claimant is

not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114.

"Unexplained, or inadequately explained, failure to seek treatment . . . can cast

doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989).

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857.

The Court "must uphold the ALJ's findings if they are supported by inferences

reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also*

*Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one

rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). The Court does not find the ALJ erred when discounting

Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**C. The ALJ properly weighed the medical opinion evidence.**

  **a. Legal Standard.**

   The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

   A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

   The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Ronald Page, Ph.D.

Dr. Page is an examining doctor who completed a psychological evaluation in December 2013. AR 25, 231-40. Dr. Page opined that he suspects that Plaintiff "would fatigue the expectations of employers with medical complaints, absenteeism, and possibly even obstructive under-performance." AR 240. Dr. Page also opined that he "do[es] not believe that [Plaintiff's] cognitive and memory issues would preclude employment in some capacity." *Id*.

The ALJ assigned little weight to Dr. Page's opinion for multiple valid reasons. AR 25. The ALJ noted that this is not actually a medical opinion as it does not provide specific vocational restrictions or an assessment of Plaintiffs abilities or limitations. AR 25. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Page's statements regarding Plaintiff's willingness to work and

her possibly fatiguing employers with her complaints contains no mention of a specific severity, Plaintiff's prognosis, or what Plaintiff can still do despite her impairments. Additionally, the ALJ assigned little weight to this opinion because it is conclusory and too speculative to be of significant probative value. AR 25. [A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. It has already been repeatedly noted that Dr. Page doubted the results of the tests performed and Plaintiff's presentation, leaving nothing else on which Dr. Page could rest his opinion.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Page's opinion.

### c. John Fackenthall, D.O.

Dr. Fackenthall is an examining doctor who completed a physical evaluation in December 2013. AR 244-48. Dr. Fackenthall opined that Plaintiff could do light

work, she could bend and stoop for one-third of the day, and she should be in a light-stress environment due to her seizures. AR 248.

The ALJ did not completely reject Dr. Fackenthall's opinion, but rather afforded significant weight to much of the opinion and the opinion that Plaintiff can perform light work, but assigned less weight to the postural restrictions opinion, and did not accept the mention of "low stress" work. AR 24. Plaintiff contends that the ALJ erred in rejecting the postural restrictions opined to. ECF No. 12 at 11. However, as noted above, the ALJ did not completely reject this portion of Dr. Fackenthall's opinion but assigned it less than significant weight. AR 24. The ALJ afforded less weight to this portion of the opinion because Dr. Rubio's opinion reflects a more accurate picture of Plaintiff's function as it is consistent with the longitudinal medical records. *Id*. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d 595, 602-603. The ALJ's decision is supported by the record, which is replete with unremarkable medical imaging, no or only mild abnormalities, normal reflexes and strength, normal gait, normal sensation, negative straight leg raise tests, and no neurological deficits. *See, e.g.,* AR 21-22, 203, 206, 209, 246-48, 406, 418-19, 443.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Fackenthall's opinion.

**D. Remedy.**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary for a proper determination to be made. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."). Further, Plaintiff's request for an immediate award of benefits is denied as further proceedings are necessary to develop the record.

On remand, the ALJ will issue a new decision that is consistent with the applicable law set forth in this Order. The ALJ will, specifically consider and discuss whether Plaintiff's impairments meet or equal Listing 12.05C.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED in part.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **DENIED.**

3. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 15th day of October, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge